**RELIANCE STEEL PRODUCTS COMPANY, Plaintiff,**

v.

**L. G. BARCUS & SONS, INC., and The State Highway Commission of Missouri, and The Federal Highway Administration of the United States Department of Transportation, Defendants.**

No. 80–6029–CV–SJ.

United States District Court, W. D. Missouri, St. Joseph Division.

April 25, 1980.

Herbert A. Fogel, Philadelphia, Pa., and Edward H. Sheppard, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for plaintiff.

George Maier, Weeks, Thomas, Lysaught & Mustain, Kansas City, Kan., and Michael Waldeck, Niewald, Risjord & Waldeck, Kansas City, Mo., for Barcus.

John B. Ewing, Kansas City, Mo., for State Highway Commission of Missouri.

Asst. U. S. Atty. Judith Strong, Kansas City, Mo., for The Federal Highway Administration of the United States Department of Transportation.

## MEMORANDUM AND ORDER DENYING PRELIMINARY INJUNCTION

SACHS, District Judge.

This proceeding was instituted by plaintiff ("Reliance") on March 31, 1980, by complaint filed against defendant ("Barcus") seeking a declaratory judgment and monetary relief. Reliance asserts diversity of jurisdiction, identifies itself as a supplier of steel grid flooring to Barcus, and alleges that Barcus is under contract with the State Highway Commission of Missouri to perform certain bridge deck replacement on a bridge spanning the Missouri River. A controversy exists between Reliance and Barcus pertaining to the supply contract. Reliance initially sought a declaration of contract rights and obligations, together with damages and "cancellation charges."

By amended complaint filed April 10, 1980, Reliance joined the State Highway Commission and sought injunctive relief against use of the products of another steel grid flooring supplier to complete the project. The amended complaint alleges that such flooring materials "may be of different strength, durability, or other characteristics from Reliance's product and may give rise to premature weakness, potholing or fracture of the bridge deck." It was further alleged that use of a mixture of products "may present a danger to the public and will subject Reliance to unwarranted exposure and liability for injury or damage . . . ."

A second amended complaint, filed April 21, 1980, joins the Federal Highway Administration, as an agency of the United States Department of Transportation. Reliance alleges that the mixture of products may breach an obligation of the co-defendants to the Federal agency, under a Federal-Aid Construction Contract, to provide safeguards protecting the safety of the public. A preliminary injunction is sought against any of the defendants' "approving, installing or completing (the project with) grid panels not manufactured by Reliance . . .."

After conferring with counsel for Reliance, Barcus and the State Highway Commission, the Court scheduled a hearing on plaintiff's request for a preliminary injunction, and heard testimony on April 22, 1980. Expert testimony was introduced from witnesses Dr. Vijay Hasija (formerly vice-president-engineering for Reliance), David Dukes (project engineer for Barcus) and James A. Moberly (structural design engineer for the State Highway Commission).

Dr. Hasija testified that all but eight of the panels have been supplied by Reliance, out of 400 ordered; that approximately 140 panels are on the jobsite, not yet installed; that panels supplied by Reliance are physically unique; that mixing panels would not affect the bridge's structural integrity or strength so as to cause "catastrophic failure" but that a mixture would likely adversely affect longterm "performance" of the surface and "durability" of the flooring. Asphalt damage might be expected, as the result of stress and an imperfect meshing of products, potholes were likely to develop, and stresses with possible breaking of welds could occur at joints. Surface cracking, requiring repairs, was likely, according to this testimony. Conditions might develop, in a number of years, requiring closing of

the bridge for repairs, according to the witness.

Dr. Hasija acknowledged that the complaints might be compared with "the use of a Sears battery in a GM car"; that is, the battery might not be compatible but the system would operate. He had no experience with projects requiring repair of part of a deck, in which products were added which differed from the original materials. He stated this would be a bad practice, but could be done if necessary.

Project manager Dukes testified for defendant Barcus that he had received approval from the State Highway Commission for use of the substitute products, that he believed there would be no adverse effect from the mixing of products, but that he "neither agrees nor disagrees" with the Hasija testimony. The witness did not question the technical soundness of the Hasija testimony, but implicitly concluded that the alleged problems were being greatly exaggerated and would not be significant in practice.

Mr. Moberly testified from 22 years of experience with the State Highway Commission, and "did not see any problem" likely to occur from the substitution of products. He acknowledged that maintaining uniformity of products would be "better practice." The Court is impressed by the testimony of this witness, who has had many years of practical experience with bridge construction and maintenance, even though he could not recall a similar problem arising in Missouri. If the mixing of products would create a significant, known danger in the industry, the Court believes that Mr. Moberly or Dr. Hasija would have so testified.

The project has a completion date of July 1, 1980. Thousands of vehicles are being diverted daily during construction. The specified completion date indicates that the contracting parties considered time to be of the essence; a $300 per day liquidated damage clause covering delay is contained in the contract.

The interest of the Federal Highway Administration in this proceeding is marginal. The use of allegedly incompatible grid plates in the flooring of the bridge would not present any realistic problem of safety to the public. The agency assists in the financing of new construction, but does not finance maintenance and repair. The State Highway Commission of Missouri is one of 17 State commissions whose construction practices have been approved by the Federal agency, so that the agency does not actively participate in supervision of construction.

The Court concludes from the preliminary showing made by the parties that mixing of products, as in the instant case, while less than an ideal practice, is not seriously objectionable or likely to create serious problems of repair and maintenance.

Turning to legal analysis, plaintiff has been content to let the Court assume it has no more than an arguable claim on the merits. If it has no sound breach of contract claim against Barcus, plaintiff has no right to insist that its grids be used to complete the project. Entitlement to a preliminary injunction is generally based on an initial appraisal that a plaintiff has a substantial probability of success at trial. *Paschall v. Kansas City Star Co.*, 441 F.Supp. 349, 356 (W.D.Mo.1977—Hunter, D. J.). Where there is simply fair ground for litigation, a plaintiff may sometimes receive interim relief on a showing that the "balance of hardships" favors granting such relief. Ibid.; *Fennell v. Butler*, 570 F.2d 263 (8th Cir. 1978). At best, this plaintiff advances a "balance of hardships" contention.

Plaintiff has fallen far short of convincing the Court that it should receive relief. Granting relief would, on the contrary, place a coercive weapon in plaintiff's hands with little or no justification. If the project could not be finished without plaintiff's product, plaintiff would be in a position to demand its own price for disposition of the controversy.

Delay in completing the project would be harmful to the public and to Barcus, and the public injury could not be remedied. The Court is being asked to shut down the project pending resolution of this contract dispute.

Prejudice to plaintiff from use of other products is entirely speculative. While it is conceivable that plaintiff could be sued some years hence, if bridge maintenance and repair of an unusual nature could be attributed to it, the State Highway Commission of Missouri is proceeding with the authorization with full notice of Dr. Hasija's warning.[1] Before being tempted to stop the project, the Court would require a conclusive showing that State Highway Commission officials are acting recklessly. On the showing made by the parties such a conclusion cannot be reached.[2]

It is therefore ORDERED that the request for a preliminary injunction should be and is denied.

---

1. Denial of a preliminary injunction would not deprive plaintiff of an opportunity to negotiate with Barcus over the minor problem of supplying the eight grid plates under protest, with the rights of the parties to be determined in a damage suit. While plaintiff would lose some bargaining power by such action, the comparative equities suggest this possible resolution of the immediate problem, assuming plaintiff disagrees with the Court's deference to the State Highway Commission's view of the acceptability of product mixing.

2. The foregoing memorandum is adopted pursuant to Rule 52(a), F.R.Civ.Proc.